IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| KELSEY JONES, *et al.*, § | |
| Plaintiffs, § | |
| § | |
| v. § | CIVIL ACTION NO. H-13-0650 |
| § | |
| XEROX COMMERCIAL § | |
| SOLUTIONS, LLC, § | |
| Defendant. § | |

## MEMORANDUM AND ORDER

This wage and overtime case is before the Court on Defendant Xerox Commercial Solutions, LLC's ("Defendant") Motion to Transfer Venue (the "Motion") [Doc. # 12]. The Motion is ripe for consideration.[1] The Court has carefully reviewed the parties' arguments, the record, and applicable law, and **denies** Defendant's Motion to Transfer Venue at this time.

## I. BACKGROUND

### A. The Texas Lawsuit

On March 8, 2013, Plaintiffs Kelsey Jones, Denise Ewin, George W. Ivey, IV, and Seth Feinhandler filed this collective action lawsuit in the Houston Division of the Southern District of Texas seeking unpaid regular wages, unpaid overtime wages, lost

---

[1] Plaintiffs filed a Response [Doc. # 15] to which Defendant filed a Reply [Doc. # 18]. Plaintiffs then filed a Sur-Reply [Doc. # 20].

wages, liquidated damages, attorneys' fees, and costs for Defendant's alleged failure to pay them and similarly situated employees minimum wage and overtime wages.[2] *See* Original Complaint [Doc. # 1], at 1, 10. Plaintiffs were employed by Defendant Xerox Commercial Solutions, LLC as "Customer Care Specialists" in Houston, Texas. *Id.* at 2. Plaintiffs contend that Defendant used a payment scheme called "ABC" under which employees were paid a flat rate per call plus premium pay, "which was calculated based on whether the Customer Care Specialists met certain targets for average call handling time and positive customer survey responses." *Id.* at 3. In January 2012, Plaintiffs assert that Defendant began using a payment system called "RBC" under which Customer Care Specialists were paid $9.00 per hour plus premium pay up to $14.00 per hour. *Id.* at 4. According to Plaintiffs, they were only compensated for time they were logged into Defendant's time-keeping system; they were logged out of the system by supervisors; and they were not compensated for time when the system experienced technical difficulties. *Id.* at 3-4. Plaintiffs allege that Defendant violated the FLSA by (1) failing to pay them minimum wage, (2) failing to pay time-and-a-half for hours worked beyond forty hours per week, and (3) discharging Plaintiffs in retaliation for complaining about these FLSA violations. *Id.*

---

[2] Daniel Narcisse and Alejandro Otero have since opted into this case. Narcisse Consent to Join [Doc. # 16]; Otero Consent to Join [Doc. # 21].

at 5.  Plaintiffs also allege claims for breach of contract, quantum meruit, and promissory estoppel. *Id.* at 7-9.

### B. The Washington Lawsuit

On October 12, 2012, a collective action lawsuit was filed in the Seattle Division of the United States District Court for the Western District of Washington alleging that Xerox Business Services LLC; Livebridge, Inc.; Affiliated Computer Services, Inc.; and Affiliated Computer Services, LLC (collectively, the "Washington Defendants") violated the FLSA by failing to pay its "customer service employees" minimum wage and overtime pay through use of a payment system referred to as the "ABC" system. *See* Collective Action Complaint (the "Washington Complaint") [Exh. B to Doc. # 20], at 1-4.

Plaintiffs Kelsey Jones, Denise Ewin, and George W. Ivey, IV, and Opt-in Plaintiff Daniel Narcisse filed consents entitling them to join that lawsuit in January and February 2013.[3]  In May 2013, these Plaintiffs filed declarations with the Washington court expressing their desire to withdraw their consent. Declarations [Exh. A to Doc. # 20]; Sur-Reply, at 3.

---

[3] *See* Ewin Consent to Join [Exh. A to Doc. # 18], at 2-5; Jones Consent to Join [Exh. B to Doc. # 18], at 2-5; Ivey Consent to Join [Exh. C to Doc. # 18], at 2-5; Narcisse Consent to Join [Exh. D to Doc. # 18], at 2-3. Plaintiff Seth Feinhandler did not consent to join the Washington lawsuit.

## II.     LEGAL STANDARD

Defendant argues that this case should be transferred pursuant to the "first-to-file" rule to the Western District of Washington. "The first-to-file rule is a discretionary doctrine." *Cadle Co v. Whataburger of Alice*, 174 F.3d 599, 603 (5th Cir. 1999). The Fifth Circuit has consistently held that, "when related cases are pending before two federal courts, the court in which the case was last filed may refuse to hear it if the issues raised by the cases substantially overlap." *Id.* (citing *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997); *West Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 728 (5th Cir. 1985)). "The first-to-file rule is 'grounded in principles of comity and sound judicial administration,' which requires 'courts of coordinate jurisdiction and equal rank [] to exercise care to avoid interference with each other's affairs.'" *Benavides v. Home Depot USA, Inc.*, No. H-06-0029, 2006 WL 1406722, at *1 (S.D. Tex. May 19, 2006) (quoting *Cadle*, 174 F.3d at 603). "The three primary concerns of the rule are: (1) to 'avoid the waste of duplication;' (2) to 'avoid rulings which may trench upon the authority of sister courts;' and (3) to 'avoid piecemeal resolution of issues that call for a uniform result.'" *Id.* (citing *Save Power*, 121 F.3d at 950-51).

The court in which the action is second filed must focus its inquiry on whether there is "substantial overlap" between the two cases. *Cadle*, 174 F.3d at 605; *Save*

*Power*, 121 F.3d at 950-51; *Benavides*, 2006 WL 1406722, at *1. The party wishing to transfer the case has the burden to prove that transfer is warranted. *See Sanofi-Aventis Deutschland GmbH v. Novo Nordisk, Inc.*, 614 F. Supp. 2d 772, 777 n.5 (E.D. Tex. 2009); *VCode Holdings, Inc. v. Cognex Corp.*, No. 2:07-cv-138, 2007 WL 2238054, at *2 (E.D. Tex. Aug. 3, 2007) (citations omitted); *Buckalew v. Celanese, LTD.*, No. G-05-315, 2005 WL 2266619, at *1 (S.D. Tex. Sept. 16, 2005). "If the cases do not completely overlap, then the court considering transfer should consider whether the cases should be consolidated, the extent of the overlap, the likelihood of conflict, and the comparative advantage and interest of each forum in resolving the dispute." *Benavides*, 2006 WL 1406722, at *1 (citing *Save Power*, 121 F.3d at 950-51). "'Once the likelihood of a substantial overlap between the two suits ha[s] been demonstrated, it [is] [] no longer up to the [second filed court] to resolve the question of whether both should be allowed to proceed.'" *Cadle*, 174 F.3d at 605 (quoting *Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403, 407 (5th Cir. 1971)).

### III.   ANALYSIS

Defendant contends that this case should be transferred under the first-to-file rule because the FLSA minimum wage and overtime pay issues are "substantially the same," Motion, at 5, and four Plaintiffs in this case consented to join the Washington

lawsuit.[4]  The Court is unpersuaded.

First, Defendant has not provided sufficient evidence to support its contention that the claims substantially overlap. Defendant has offered no evidence that the so-called "ABC" payment program in the Washington lawsuit is the same payment program as the "ABC" program referenced in this case.  Although the payment programs may share a nickname, there is no evidence that they function in the same manner or are part of a single payment practice by a single entity.  Indeed, it appears from the respective plaintiffs' allegations in the two suits that the systems do not function the same.  The "ABC" system in Texas is alleged to have involved the payment of a flat rate per call plus premium pay if targets for average call handling time and positive customer survey responses were met. Original Complaint, at 3.  In the Washington lawsuit, the "ABC" payment system allegedly compensated employees at an hourly rate plus incentive pay based on time spent on calls with customers. Washington Complaint, at 4.  Defendant also offered no evidence that the "RBC" payment program was used by any of the Washington Defendants or is at issue in the Washington case.

Additionally, there are a several unique allegations within the FLSA wage

---

[4] In the alternative, Defendant argues that, if the Court is unwilling to transfer the entire case, the FLSA minimum wage and overtime pay claims should be severed and transferred.  *See* Motion, at 16-17.

claims asserted by Plaintiffs' at bar. Although claims in both suits involve allegations that the plaintiffs were not paid for pre-shift, post-shift, and shift work outside the "ABC" system, Plaintiffs here allege additional practices that resulted in unpaid work. Plaintiffs contend that they "were frequently logged out of the time-keeping system by supervisors and others resulting in unpaid working time," and "[w]orking time of Plaintiffs was not recorded when the time-keeping system experienced technical failures or failed to load." Original Complaint, at 4. Two Plaintiffs in the case at bar, Seth Feinhandler and George W. Ivery, IV, also assert that they were in "performance coach" positions "where they were required to be away from their work stations to assist other Customer Care Specialists with customer calls" and that they were not paid for the time spent coaching other Customer Care Specialists. Original Complaint, at 4. There are no similar allegations in the Washington complaint. Thus, Defendant has not established that the FLSA minimum wage and overtime pay claims substantially overlap with those in the Washington lawsuit. Defendant simply has failed to show that problems will arise if the two courts should issue inconsistent rulings. *See Buckalew*, 2005 WL 2266619, at *3.

Plaintiffs here also raise several causes of action independent from their FLSA claims. In *Buckalew v. Celanese, LTD*, the court explained that claims of retaliation, intentional infliction of emotional distress, and harassment differentiated the second

filed case from the first. *Id.* at *3. Here, Plaintiffs allege claims for retaliation under the FLSA and common law claims for breach of contract, quantum meruit, and promissory estoppel. Original Complaint, at 7-9. No comparable claims are presented in the Washington lawsuit. Consolidating the two lawsuits therefore would not avoid duplication, piecemeal resolution, or trenching upon the authority of sister courts as to these issues. Indeed, the facts and legal issues raised by Plaintiffs' FLSA minimum wage and overtime pay claims are distinct from Plaintiffs' FLSA retaliation claims.

Further, significantly, Defendant does not establish that substantial overlap exists between either the plaintiffs or the defendants in the two lawsuits. "The first-to-file rule does not require identical parties, but the fact that the parties are different cuts against an argument for substantial overlap." *Buckalew*, 2005 WL 2266619, at *3 (explaining that there was not substantial overlap, *inter alia*, because although the defendants in the two lawsuits were the same, the plaintiffs were not). Defendant has offered no evidence that it is affiliated with any of the Washington Defendants. Defendant is a foreign limited liability company registered in Las Vegas, Nevada. Assumed Name Certificate [Exh. A to Doc. # 15], at 2; Business Organization Inquiry for Xerox Commercial Solutions, LLC ("Organizational

Inquiry") [Exh. A to Doc. # 15], at 3.  Xerox Business Services, LLC[5] is a Delaware limited liability company; Livebridge, Inc. is an Oregon corporation; Affiliated Computer Services, Inc. is a Delaware corporation; and Affiliated Computer Services, LLC is a Delaware limited liability company.  Washington Complaint, at 2-3.

In addition, Plaintiffs are no longer a part of the Washington lawsuit.  Plaintiffs each have withdrawn his or her consent to join that suit.  Declarations [Exh. A to Doc. # 20]; Sur-Reply, at 3.  Accordingly, on the record before this Court, there is no evidence that the parties in the Washington lawsuit overlap with the parties in this case at all.

Finally, the Houston Division of the United States District Court for the Southern District of Texas has a greater interest in resolving this dispute.  Plaintiffs now seek a much narrower collective action involving only the Customer Care Specialists currently or formerly employed in Houston, Texas.  *See* Oral Argument Recording of May 20, 2013 Hearing.  The witnesses and records related to Plaintiffs' claims are in Houston, Texas.  The case also involves local citizens who chose Houston as the forum for their dispute.  It is a well-established ruled that "the plaintiff's choice of forum is generally entitled to great deference."  *Buckalew*, 2005

---

[5]  The Washington complaint reveals that Xerox Business Services, LLC is affiliated with or acquired the other Washington Defendants.  Washington Complaint, at 3-4.

WL 2266619, at *3 (citing *Speed v. Omega Protein, Inc.*, 246 F. Supp. 2d 668, 672 (S.D. Tex. 2003)). Accordingly, the Court denies Defendant's Motion to Transfer Venue.

## IV. CONCLUSION

On this record, Defendant has failed to establish that there is a substantial overlap between the two suits that likely will result in conflicting rulings. It is therefore

**ORDERED** that Defendant's Motion to Transfer Venue [Doc. # 12] is **DENIED without prejudice.**

SIGNED at Houston, Texas, this 26th day of **June, 2013.**

_____
Nancy F. Atlas
United States District Judge