IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KELSEY JONES, *et al.*, | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:13-cv-650 |
| | § | |
| XEROX COMMERCIAL | § | |
| SOLUTIONS, LLC., Individually | § | |
| d/b/a ACS COMMERCIAL | § | |
| SOLUTIONS, LLC, | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

This case, brought under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*

("FLSA"), is before the Court on the Motion for Conditional Certification filed by

Plaintiffs Kelsey Jones ("Jones"), Denise Ewin ("Ewin"), Seth Feinhandler

("Feinhandler"), Daniel D. Narcisse ("Narcisse"), and Alejandro Otero ("Otero," and,

together with Jones, Ewin, Feinhandler, and Narcisse, "Plaintiffs") [Doc. # 43].  Also

before the Court is Defendant Xerox Commercial Solutions, LLC's ("XCS" or

"Defendant") Motion to Strike the Declarations of Roberto Rodriguez and Martha P.

Franco Filed in Support of Plaintiffs' Motion for Conditional Certification

[Doc. # 46] ("Motion to Strike").  These motions are ripe for consideration.[1]  Having considered the parties' briefing and the applicable legal authorities, the Court **denies** Defendant's Motion to Strike and **denies** Plaintiffs' Motion for Conditional Certification.

## I.   BACKGROUND

The undisputed evidence of record establishes the following.

### A.   XCS's Organizational Structure

Defendant XCS runs and manages, among other things, various Strategic Business Units ("SBUs"), or call centers, around the United States, including in Texas.[2]  Employees at the SBUs are tasked with answering calls from and servicing XCS's corporate clients.[3]  SBUs are located in XCS facilities; some XCS locations house more than one SBU.[4]

---

[1]   Defendant filed a Response to Plaintiffs' Motion [Doc. # 45], to which Plaintiffs filed a Reply [Doc. # 47] and Defendant filed a Sur-reply [Doc. # 48].  Plaintiffs filed a Response to Defendant's Motion [Doc. # 49], to which Defendant filed a Reply [Doc. # 50] and Plaintiffs filed a Sur-reply [Doc. # 51].

[2]   Declaration of Jamie Son [Exh. A to Doc. # 45] ("Son Decl."), ¶¶ 4-5.  Jamie Son is a Vice President of Human Resources at XCS.  *Id.*, ¶ 2.

[3]   Plaintiffs' First Amended Complaint [Doc. # 28] ("Complaint"), ¶ 7.

[4]   Son Decl., at ¶ 7.

Employees at an XCS SBU hold different positions.[5]   Customer Service Representatives ("CSRs") are "responsible for handling account and/or technical support inquiries over the telephone" from XCS clients.[6]   Floorwalkers and Team Leads "assist CSRs with difficult calls, take calls of their own, and, when necessary, act as a Supervisor."[7]   Supervisors manage CSRs and generally serve as the CSRs' primary contact.[8]   Finally, Supervisors report to Managers, who oversee the operations of an SBU.[9]

Additionally, some SBUs utilize a management team, referred to by XCS as "Workforce."[10]   Where there is a Workforce, employees in that unit oversee "the SBUs staffing and scheduling needs," including "managing and administering overtime."[11]

---

[5]      Not all SBUs have employees in all of these positions.

[6]      Complaint, ¶ 12.

[7]      Son Decl., ¶¶ 17-18.

[8]      *Id.*, ¶ 16.

[9]      *Id.*, ¶¶ 12-15.

[10]      Son Decl., ¶ 19.

[11]      *Id.*

B.      **XCS's Compensation Structures**

XCS SBUs use various systems to compensate CSRs.[12]  Under the Achievement

Based Compensation ("ABC") plan, which XCS employed for the Sprint SBU at its

Hayes Road facility in Houston, Texas (the "Houston Sprint SBU"), until

approximately January, 2012, CSRs are compensated on a "pay-per-call" model.[13]

Under the Results Based Compensation ("RBC") plan, which XCS commenced at the

Houston Sprint SBU in or about January, 2012, CSRs are paid an hourly rate that

varies based on performance criteria.[14]

CSRs paid under an ABC or RBC system record their time through an Auxiliary

Work mode ("Aux Work") system.[15]  There are two modes in the Aux Work system.

When in "work mode," CSRs can receive calls from XCS clients.  When in "non-work

mode," such as during breaks, training sessions, or meetings, CSRs cannot receive

calls.[16]  Defendant XCS has presented evidence from a Vice President of Human

Resources that CSRs remain logged into the time-keeping system when in a "non-

---

[12]     Defendant's Response [Doc. # 45], at 7.

[13]     Complaint, ¶ 13; Son Decl., ¶ 21.

[14]     Complaint, ¶ 15; Son Decl., ¶ 22.  The criteria used to determine the hourly rate vary by SBU.  Son Decl., ¶ 22.

[15]     Son Decl., ¶ 26.

[16]     *Id.*

work" Aux Work mode.[17]  Plaintiffs, in contrast, allege that they were logged out of the time-keeping system when their phones were placed in certain Aux Work modes.[18] Plaintiffs' declarations, however, do not distinguish between being logged out of the time-keeping system as a whole and being logged out of "work" Aux Work modes.

The crux of the parties' disagreement in this case is whether time spent on certain tasks while at work was in fact compensated under the ABC and RBC systems. Plaintiffs state that they were required to log into the Aux Work system in order to record time and that their time was not recorded unless they were logged into the system.[19]  Plaintiffs allege that "[u]nder the ABC system [they] were not paid for time spent locating a work station, logging into the computer and telephone system, taking short breaks of fifteen (15) minutes, waiting for customer calls or for time in between calls,"[20] and that under both systems they were "frequently logged out by supervisors

---

[17]     *Id.*

[18]     *See, e.g.*, Declaration of Kelsey Jones [Exh. B to Doc. # 43], ¶ 7.

[19]     Plaintiffs' Reply [Doc. # 47], at 5.

[20]     Complaint, ¶ 14.  Plaintiffs focus their briefing and evidence on the time for which they believe they were not compensated when supervisors or others logged them out of the Aux Work system or when the Aux Work system experienced technical issues. *See* Plaintiffs' Reply [Doc. # 47], at 5; Plaintiffs' Declarations [Exhs. B-E to Doc. # 45], *passim*.  Accordingly, the Court only focuses on these two theories for class certification purposes.

and others," resulting in unpaid time.[21]  Furthermore, Plaintiffs contend that they were

not paid when the time-keeping system experienced technical issues, or "downtime."[22]

Plaintiffs' depositions, however, establish that Plaintiffs personally lack any clear

understanding of the mechanics of the time-keeping systems, and Plaintiffs have

submitted no evidence on this subject.  Defendant responds to Plaintiffs' contentions

with evidence that under the ABC system CSRs are paid a flat rate for time spent on

several enumerated tasks, such as training sessions and meetings,[23] and that under the

RBC system CSRs "receive a flat hourly rate equal to or above the minimum wage for

time spent on break, training, participating in meetings and coaching, or during a work

shortage or system downtime."[24]

Other XCS employees are paid in different ways.  Defendant's evidence

establishes that in some SBUs, employees, including CSRs, are paid a straight hourly

wage.[25]  Similarly, all trainees,[26] Floorwalkers, and Team Leads are paid a flat hourly

---

[21]     Complaint, ¶ 16.

[22]     *Id.*, ¶ 20.

[23]     Son Decl., ¶¶ 21-22.

[24]     *Id.*, ¶ 22.

[25]     *Id.*, ¶ 23.

[26]     Employees hired by XCS must first undergo a training period before they "move to
         the floor" to become CSRs.  During this period, employees are referred to as
         (continued...)

rate.[27]   Additionally, SBU supervisors are eligible for incentive payments based on

defined metrics, including a reduction in their teams' overtime payments.[28]

### C.   Plaintiffs' Claims

On March 8, 2013, Jones, Ewin, Feinhandler, and George W. Ivery, IV

("Ivery"), employees at the Houston Sprint SBU, on behalf of themselves and all

others similarly situated, filed this collective action against Defendant.   Plaintiffs

assert five causes of action against Defendant: (1) FLSA wage violations; (2) FLSA

retaliation; (3) breach of contract; (4) quantum meruit; and (5) promissory estoppel.[29]

They seek, among other things, "unpaid regular wages, unpaid overtime wages, lost

wages, liquidated damages, attorneys' fees and costs" under the FLSA and "unpaid

wages and premium payments, actual damages, interest and attorneys' fees and costs"

---

[26]   (...continued)
   "trainees."  *See, e.g.*, Deposition of Alejandro Otero [Exh. I to Doc. # 45] ("Otero
   Dep."), at 17:7-24.

[27]   *Id.*, ¶¶ 23-25.

[28]   *See* ABC and Results Based Compensation (RBC) Presentation [Exh. F to Doc. # 43],
   at 7.

[29]   As their "Second Cause of Action" Plaintiffs have asserted "Collective Action
   Allegations."  Complaint, ¶¶ 38-43.  This Court notes that 29 U.S.C. § 216(b), which
   permits collective actions under the FLSA, is a procedural tool by which employees
   can bring a collective action, but does create a cause of action in itself.  Thus, the
   Court does not consider this cause of action a formal "claim."

for their other claims.[30]

Since this action was commenced, the identities of Plaintiffs have changed substantially.[31]  Plaintiffs (currently, Jones, Ewin, Feinhandler, Narcisse, and Otero)[32] and the other active interested parties (Clemons and Coleman) all were employed in various roles at the Houston Sprint SBU.  Jones and Ewin were employed as CSRs.[33] Feinhandler and Narcisse were initially employed as CSRs, but later were promoted to Floorwalkers.[34]  Otero was employed as a CSR, but only served as a trainee in that

---

[30]     Complaint, ¶ 63(b-c).

[31]     Plaintiffs filed a Notice of Consent on behalf of Narcisse on May 14, 2013 [Doc. # 16], on behalf of Otero on June 3, 2013 [Doc. # 21], and on behalf of Alisha Swain ("Swain") on June 24, 2013 [Doc. # 24].   On June 17, 2013, Plaintiffs filed an Amended Complaint [Doc. # 28] in which they added Narcisse, Otero, and Swain as named plaintiffs.  Plaintiffs filed a Notice of Consent on behalf of Jameka Clemons ("Clemons") on August 5, 2013 [Doc. # 32], and on behalf of Jennifer Coleman ("Coleman") on September 23, 2013 [Doc. # 44].  On August 7, 2013, Defendant filed a motion to dismiss Ivery and Swain as plaintiffs [Doc. #33].  Three weeks later, on August 28, 2013, Plaintiffs voluntarily dismissed Ivery and Swain as plaintiffs [Docs. # 37 and # 38], which relief the Court granted on August 29, 2013 [Docs. # 40 and # 41].  Clemons and Coleman have not been added as plaintiffs in this action.

[32]     Complaint, ¶ 5.

[33]     Deposition of Kelsey Jones [Exh. E to Doc. # 45] ("Jones Dep."), at 13:21-23; Deposition of Denise Ewin [Exh. F to Doc. # 45] ("Ewin Dep."), at 23:16-18.

[34]     Deposition of Seth Feinhandler [Exh. H to Doc. # 45] ("Feinhandler Dep."), at 12:10-13; Deposition of Daniel Narcisse [Exh. G to Doc. # 45] ("Narcisse Dep."), at 16:6-13.

capacity.[35]   Clemons was employed as both a CSR and a Supervisor.[36]

In addition to their own declarations filed with their Motion for Conditional Certification, Plaintiffs have filed declarations from two employees (one current, one former) of an XCS SBU in El Paso, Texas.[37]   Both of these latter declarants complain of having been logged out of XCS's time-keeping system by the "Workforce."[38] Moreover, both declarants state that they know of other employees (left unnamed) who experienced the same problem.[39]   Finally, in her declaration, Martha Franco ("Franco") states that she "would be interested in joining the lawsuit."[40]

---

[35]   Otero Dep., at 14:9-13, 16:25-18:3.

[36]   Declaration of Dierdre Brown [Exh. B to Doc. # 45] ("Brown Decl."), ¶ 37.  No party has disclosed Coleman's position at XCS.

[37]   *See* Exhs. B-E to Doc. # 43; Declaration of Rodrigo Rodriguez [Exh. G to Doc. # 43] ("Rodriguez Decl."); Declaration of Martha Franco [Exh. H to Doc. # 43] ("Franco Decl.").

[38]   *See* Rodriguez Decl., ¶ 6; Franco Decl., ¶ 6.

[39]   *See* Rodriguez Decl., ¶ 7; Franco Decl., ¶ 7.

[40]   *See* Franco Decl., ¶ 8.  Defendant has asked this Court to strike the declarations of Ricardo Rodriguez ("Rodriguez") and Martha Franco ("Franco").  Defendant's Motion to Strike [Doc. # 46].  Defendant argues that Rodriguez and Franco are subject to binding arbitration agreements that preclude them from opting into this collective action.  *Id.* at 1-2.  Furthermore, Defendant claims that certain paragraphs of the declarations are not made based on personal knowledge of the declarants.  *Id.* at 6.  Defendant's objections are overruled and Defendant's Motion to Strike [Doc. # 46] is **denied**.  The issue of whether Rodriguez and Franco can opt-in to a potential collective action is not before this Court, and the Court takes no position on the merits
(continued...)

## II.    LEGAL STANDARD

When considering whether to certify a lawsuit under the FLSA as a collective

action, courts in this federal district generally use a "two-step *ad hoc* approach."  *See*

*Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213-14 (5th Cir. 1995), *overruled on*

*other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003) (citing *Lusardi v.*

*Xerox Corp.*, 122 F.R.D. 463, 465-66 (D.N.J. 1988); *Walker v. Honghua Am., LLC*,

870 F. Supp. 2d 462, 465 (S.D. Tex. 2012) (Ellison, J.) (citing cases); *Richardson v.*

*Wells Fargo Bank, N.A.*, 2012 WL 334038, at *1-2 (S.D. Tex. Feb. 2, 2012).  At the

first stage, the Court decides whether to issue notice to potential class members.

*Walker*, 870 F. Supp. 2d at 465.  The second stage occurs when discovery is largely

complete and the defendant moves to "decertify" the conditionally certified class.  *Id.*

at 466.  "Neither stage of certification is an opportunity for the court to assess the

merits of the claim by deciding factual disputes or making credibility determinations."

---

[40]      (...continued)
of that question.  Inability to be a party to a suit does not preclude a person from
giving relevant evidence.  *See generally* FED. R. CIV. P. 45; FED. R. EVID. 401.  The
Court finds these witnesses' declarations admissible and considers them for various
purposes.  First, these declarations constitute some evidence on the issue of whether
other aggrieved individuals exist in Texas.  Moreover, Rodriguez and Franco, having
worked in the El Paso, Texas, facility, have personal knowledge of Defendant's
employment practices there.

*McKnight v. D. Houston, Inc.*, 756 F. Supp. 2d 794, 802 (S.D. Tex. 2010) (Rosenthal, J.).

At the notice stage, the Court's decision is generally based on the pleadings, affidavits, and other limited evidence. *Mooney*, 54 F.3d at 1214; *Walker*, 870 F. Supp. 2d at 465. Analysis at this stage requires the plaintiffs to show that "(1) there is a reasonable basis for crediting the assertions that aggrieved individuals exist, (2) that those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted, and (3) that those individuals want to opt-in to the lawsuit." *Walker*, 870 F. Supp. 2d at 465-66. "Although collective actions under the FLSA are generally favored, the named plaintiff(s) must present some factual support for the existence of a class-wide policy or practice." *Carey v. 24 Hour Fitness USA, Inc.*, 2012 WL 4857562, at *1 (S.D. Tex. Oct. 11, 2012) (citing *Walker*, 870 F. Supp. 2d at 466).

The key consideration is that to be "similarly situated," there must be "substantial allegations that potential members 'were together the victims of a single decision, policy, or plan.'" *McKnight*, 756 F. Supp. 2d at 801 (quotations and citations omitted). To make this determination, courts generally look to the factual and employment settings of the individual plaintiffs, *see Hardemon v. H & R Block East. Enters.*, 2011 WL 3704746, at *3 (S.D. Fla. Aug. 23, 2011) (citations omitted),

and the existence of a common policy or plan affecting the potential plaintiffs. *See Russell v. Ill. Bell Tel. Co.*, 575 F. Supp. 2d 930, 937 (N.D. Ill. 2008) (citations omitted) (observing that courts have defined "similarly situated" in various ways, including finding that the potential collective action participants must "perform[ ] the same type of duties as the named plaintiff" or that they "were victims of a common policy or plan that violated the law"). Certification should be denied "'if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice.'" *McKnight*, 756 F. Supp. 2d at 801 (quoting *England v. New Century Fin. Corp.*, 370 F. Supp. 2d 504, 507 (M.D. La. 2005)).

Where minimal evidence is advanced at the notice stage, courts have observed that the conditional class determination "is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class" that provides potential class members with notice and the opportunity to opt in. *McKnight*, 756 F. Supp. 2d at 801 (quoting *Mooney*, 54 F.3d at 1214 n.8); *see also Walker*, 870 F. Supp. 2d at 465. Where the parties have conducted substantial discovery in connection with class certification, however, some courts have applied a more exacting level of scrutiny rather than the lenient one typically associated with the notice stage. *See, e.g., Hardemon*, 2011 WL 3704746, at *2 ("The voluminous discovery that the [p]arties have already conducted in connection with class certification in this matter

. . . merits a heightened level of scrutiny . . ."); *Basco v. Wal-mart Stores Inc., et al.*, 2004 WL 1497709, at *4 (E.D. La. July 2, 2004) ("[I]n light of the substantial discovery that has occurred in this matter, the Court will consider the criteria for both the first and second steps in deciding whether it should certify this matter."). These courts have made factual determinations as to whether the claimants are similarly situated based on the totality of the circumstances. *See Hardemon*, 2011 WL 3704746, at *3 (citations omitted).[41]

Here, because the parties have conducted several months of discovery on the conditional certification issue, this Court has considered applying a more exacting standard, rather than the "lenient" one advocated by Plaintiffs. Nevertheless, the Court does not do so, and instead evaluates the parties' evidence and argument under the lenient standard typically applied in this circuit.

## III.   ANALYSIS

### A.   Evidence that Other Aggrieved Individuals Exist

There is sufficient evidence that a number of aggrieved individuals exist. Indeed, Defendant does not dispute this fact.[42]   There are five Plaintiffs in this suit,

---

[41]   The Court does not rely on *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011), because Rule 23 certification requirements do not apply to FLSA collective actions. *See LaChapelle v. Owens-Illinois, Inc.*, 513 F.2d 286, 288 (5th Cir. 1975).

[42]   *See* Defendant's Response [Doc. # 45], at 14 n.21.

all of whom have submitted notices indicating their consent to join the lawsuit and declarations regarding the facts underlying their claims. Plaintiffs also submitted notices of consent from two other individuals who were employed at the Houston Sprint SBU. *See* Notice of Consent of Jameka Clemons [Doc. # 32]; Notice of Consent of Jennifer Coleman [Doc. # 44]. Some of the interested individuals occupied different positions at XCS. Their claims, however, all arise from XCS supervisors' management of subordinates' time-keeping. Thus, Plaintiffs have established a "reasonable basis for crediting the assertions that aggrieved individuals exist." *See Simmons v. T-Mobile USA, Inc.*, 2007 WL 210008, at *5 (S.D. Tex. Jan. 24, 2007).[43]

---

[43]    Various courts also require a plaintiff seeking conditional certification to present evidence of other similarly situated individuals who want to opt into the lawsuit. *See, e.g., Dybach v. State of Fla. Dept. of Corr.*, 942 F.2d 1562, 1567-68 (11th Cir. 1991); *Haynes v. Singer Co.*, 696 F.2d 884, 887 (11th Cir. 1983); *Simmons v. T-Mobile USA, Inc.*, 2007 WL 210008, *9 (S.D. Tex. Jan. 24, 2007); *H & R Block, Ltd. v. Housden*, 186 F.R.D. 399, 400 (E.D. Tex. 1999). The Fifth Circuit has not addressed this factor. The Court concludes that typically a showing is necessary that at least a few similarly situated individuals seek to join the lawsuit. Other employees' interest in joining the litigation is relevant to deciding whether or not to put a defendant employer to the expense and effort of notice to a conditionally certified class of claimants in a collective action. *See, e.g., H & R Block*, 186 F.R.D. at 400 (explaining that "whether affidavits of potential plaintiffs were submitted" is one of several factors that courts *may* consider). Here, Plaintiffs have shown that others would be interested in opting into this lawsuit. Some of the current Plaintiffs joined this case after it was filed, and have since become parties to the case, while others have expressed a desire to become plaintiffs. *See* Notices of Consent [Docs. # 16, # 21, # 32, and # 44]; Plaintiffs' First Amended Complaint [Doc. # 28]. Accordingly, Plaintiffs have provided sufficient evidence to indicate that other individuals would opt in to this lawsuit.

### B.     Existence of Similarly Situated Individuals

Plaintiffs allege that they, as well as others paid under the ABC and RBC compensation plans, were subject to a common policy or practice whereby the time that they actually worked at XCS was not accurately recorded because Plaintiffs "were frequently logged out of Defendant's time-keeping system."[44]  Specifically, Plaintiffs claim that they were logged out of the time-keeping system when they put their phones into certain Aux Work system modes, such as for "trainings, meetings and breaks."[45]  Plaintiffs also claim that they were not accurately compensated for time worked during a system failure.[46]

Defendant poses a bevy of reasons why Plaintiffs are not similarly situated.  In particular, Defendant focuses on Plaintiffs' various job titles, work positions, work locations, schedules, and reporting structures.[47]  Defendant also focuses on the various compensation systems under which Plaintiffs were compensated.[48] Furthermore, Defendant contends that Plaintiffs, in their depositions, have asserted different claims regarding alleged underpayments, including who may have caused

---

[44]     Plaintiffs' Motion [Doc. # 43], at 8.

[45]     *Id.*, at 9.

[46]     *Id.*, at 4.

[47]     Defendant's Response [Doc. # 45], at 9-11, 16-17.

[48]     *Id.*, at 7-9, 17.

the work to be under-recorded, and therefore "there is no one common theme of illegality that would unify [Plaintiffs]."[49]

Plaintiffs' request for a Texas-wide class certification is denied.  Plaintiffs have not produced evidence to suggest that Defendant has instituted a Texas-wide policy, written or otherwise, to deny call-center employees pay for time recorded in certain Aux Work modes or for time spent during a system failure.  First, it is noted that almost all of Plaintiffs' evidence relates to employees at the Houston Sprint SBU. Plaintiffs' only other evidence is declarations from two employees at an XCS SBU in El Paso, Texas.[50]  The Court finds that Plaintiffs' evidence (Plaintiffs' and the El Paso employees' declarations augmented by Plaintiffs' depositions) is insufficient to support conditional certification of a Texas-wide—or any other—class.  The evidence is uncontroverted that there are and have been significant differences in the way that employees at various XCS SBUs record time and are compensated.[51]  The manner of automated recording of time at each location is critical to the merits of Plaintiffs'

---

[49]     *Id.*, at 19-21.

[50]     Whether these employees may opt into a collective action, however, is contested.  *See supra* footnote 39.

[51]     *See, e.g.*, Son Decl., ¶¶ 26-27; Ewin Dep., at 96:22-97:19.  Plaintiffs provide little evidence about how employees' time is recorded at other SBUs, pointing solely to the two El Paso employees' limited declarations.  *See* Son Decl., ¶ 9.  Plaintiffs' deposition testimony reveals that Plaintiffs do not know how the time-keeping program actually records employees' work time.

claims.  For example, CSRs at the Houston Sprint SBU use the AVAYA telephonic system to record time, whereas employees at other XCS SBUs use different computer-based programs.[52]  Time-keeping systems thus vary by SBU and by client and, in some cases, are proprietary to that client.[53]  Plaintiffs have not shown that these systems operate consistently such that employees at the various SBUs would be similarly situated.

Conditional certification of Plaintiffs' requested class also is not warranted because Plaintiffs do not demonstrate a basis to find that they were logged out of the automated time-recording program in any systematic fashion *or* that XCS had a plan or policy to log them out systematically.  While Plaintiffs argue that Workforce employees (who act in a supervisory role) logged them out of the time-keeping program when a Plaintiff shifted to "non-work" Aux Work mode on many occasions, and that the supervisors were incentivized to do so in order to minimize employee overtime payments,[54] some Plaintiffs concede that their Workforce or other supervisors did not log them out every time Plaintiffs' shifted into certain Aux Work

---

[52]     Brown Decl., ¶ 22; Son Decl., ¶ 27.

[53]     *See, e.g.*, Chart of Call Centers in Texas [Exh. A-6 to Doc. #45].

[54]     *See* Complaint, ¶ 19; Plaintiffs' Motion [Doc. # 43], at 9.

modes.[55]   Some Plaintiffs also acknowledge that supervisors told them to cover their

phones to prevent others from touching them.[56]   The fact that Workforce employees

decided when to log Plaintiffs and others out of the time-keeping system undermines

the case for a collective action.   Because, in Plaintiffs' view, Workforce employees

or other supervisors had discretion to log employees out of the Aux Work system,

Plaintiffs' simply cannot show that XCS has now or had in the past a common policy

or unified system governing the log-outs.

Moreover, Defendant contends, and Plaintiffs do not contest, that Plaintiffs are

responsible for recording all their work time, including that which is not accurately

captured by the Aux Work or other time-keeping programs, and that Plaintiffs'

supervisors must correct all errors, if necessary.[57]   For example, certain Plaintiffs have

---

[55]   *See, e.g.,* Feinhandler Dep., at 100:7-10.

[56]   *See, e.g.*, Ewin Dep., at 106:13-107:10.

[57]   *See* Son Decl., ¶¶ 6(b), 6(g); Brown Decl., ¶¶ 13, 25.   Defendant has produced its written policies that require employees to accurately record all time worked.   For example, employees are expressly required to log all time that they work.   *See* Xerox Services Employee Guidebook (March 2012) [Exh. A3 to Doc. # 45], at 5 ("Non-exempt (hourly) employees are obligated to keep accurate records of the time worked in accordance with the timekeeping procedures in effect at their work location . . . . Check with your manager regarding the established procedure for recording hours worked, including arrival and departure times from work, rest breaks, lunch/meal periods and other brief absences . . ."). Furthermore, employees are forbidden to record, tamper with, or alter the time of another employee. *See id.* ("Employees must not record hours worked for another employee[,] tamper with or alter another employee's recorded time or alter their own record.").   Finally, XCS has a written
(continued...)

admitted that they reported time-keeping errors to their supervisors and that they were informed that the errors would be corrected.[58]  Other Plaintiffs have admitted that they were told they would be paid for time spent working during a system failure.[59]

Plaintiffs complain about log-outs and inaccurate recording of time that were not the result of a systematic policy by XCS.  Accordingly, assessment of these issues necessitates an individual inquiry for each Plaintiff, thereby making a collective action inappropriate.  Each Plaintiff's claims and each week's time will need to be assessed through a range of individualized inquiries, such as who logged each Plaintiff out, why and when each Plaintiff was logged out, the reasons that Workforce members (or other supervisors) chose to log out each employee each day, whether the employee manually recorded the unlogged time, whether the employee requested

---

(...continued)

     policy that provides for overtime pay at one and one-half times the employee's regular rate for all time worked over forty hour in a given week.  *Id.* at 3.  Although written policies are not dispositive of whether an actual plan or practice exists, written policies are relevant considerations when assessing workers' arguments about the existence of a company-wide policy.  *See Russell*, 575 F. Supp. 2d at 935 (citing *Burch v. Quest Commc'ns Int'l., Inc.*, 500 F. Supp. 2d 1181, 1188 (D. Minn. 2007)) ("[T]he mere fact that a company has a written overtime policy does not defeat conditional certification when a plaintiff provides countervailing evidence of a common policy of not paying for overtime.").  A written policy dictating overtime pay can be a factor weighing against conditional certification.  *Burch*, 500 F. Supp. at 1188.

[58]   *See, e.g.,* Ewin Dep., at 137:24-138:16; Otero Dep., at 77:19-24.

[59]   *See, e.g.,* Jones Dep., at 100:15-20.

credit for the time from a supervisor, and whether or not each employee's supervisor properly corrected the time-keeping records.  This case is much like many "off-the-clock" cases where "allegedly dozens (if not hundreds) of different low-level supervisors with wide management discretion in practice violated Defendant's clear, lawful written policies . . . ."  *Simmons*, 2007 WL 210008, at *6; *see also Carey*, 2012 WL 4857562, at *2 ("While it may be true that these common questions must be answered for each potential plaintiff in this case, obtaining *answers* to those questions requires a highly individualized analysis." (emphasis in original)).  Plaintiffs have not presented the Court with any case that would suggest otherwise.

In short, Plaintiffs have not submitted evidence sufficient to meet their "minimal" burden of proving that they and other XCS call-center employees are "similarly situated" with regard to a Defendant-instituted Texas-wide, or even SBU-wide, policy in violation of the FLSA for purposes of certifying a collective action. Moreover, Defendant's evidence that, under both the ABC and RBC systems, employees receive a flat hourly rate for time recorded in a "non-work" Aux Work mode or for time spent during a system failure[60] (*i.e.*, that Plaintiffs were actually paid for the contested work time) is unrefuted by Plaintiffs.[61]

---

[60]      Son Decl., ¶¶ 21-22.

[61]      *See, e.g.,* Feinhandler Dep., at 67:6-70:13.

IV.   **CONCLUSION**

Plaintiffs have not shown that they are sufficiently similarly situated to warrant conditional certification of a class under the FLSA.[62]   Accordingly, the Court denies conditional class certification.  Individuals who seek to assert their FLSA claims (and are not precluded from doing so by arbitration agreements in their employment contracts) may move to intervene as plaintiffs if they so choose.

For the foregoing reasons, it is hereby

**ORDERED** that Defendant's Motion to Strike the Declarations of Roberto Rodriguez and Martha P. Franco Filed in Support of Plaintiffs' Motion for Conditional Certification [Doc. # 46] is **DENIED**.  It is further

**ORDERED** that Plaintiffs' Motion for Conditional Certification [Doc. # 43] is **DENIED**.  It is further

**ORDERED** that counsel shall appear before the Court on **November 14, 2013, at 10:30 a.m.** for a pretrial conference.

SIGNED at Houston, Texas, this __6th__ day of **November, 2013**.

Nancy F. Atlas
United States District Judge

---

[62]   While Plaintiffs' briefing does not indicate whether their request for a collective action to their first cause of action (FLSA wage violations), their proposed notice to employees makes clear that their request is limited to this claim.  *See* Notice to Current or Former Employees of ACS/Xerox [Exh. A to Doc. # 43], at 1.